[Civ. No. 555. Second Appellate District.—December 19, 1908.]

## L. G. NELLES, Appellant, v. A. F. MacFARLAND, Respondent.

INSURANCE COMPANIES—COMPENSATION OF SPECIAL AGENT—PERCENTAGE ON RENEWAL PREMIUMS RESTRICTED TO CONTINUANCE OF CONTRACT.—When a contract for the employment of a special agent provided for a percentage on renewal premiums, but expressly restricted such percentage to renewals paid during the continuance of the contract of employment, which provided for a termination thereof, upon notice by either party, if it appears that at the time of the termination of the contract no renewal premiums had been paid, none can be recovered by the agent after such termination.

ID.—NUMBER OF RENEWALS PROVIDED FOR DURING CONTINUANCE OF CONTRACT IMMATERIAL.—Notwithstanding a clause of the contract provided for nine renewal premiums on obtaining $12,000 insurance, if paid and accepted during the continuance of the contract, the obtaining of such insurance will not entitle the agent to renewal premiums paid after the termination of the contract, though no premium on that insurance had been previously paid.

ID.—CONSTRUCTION OF CONTRACT—EFFECT TO BE GIVEN TO EVERY PART—RIGHT OF RECOVERY LIMITED.—It is the duty of the court, under section 1641 of the Civil Code, in the interpretation of contracts, to give effect to every part thereof, if reasonably practicable; and, under the contract here involved, effect must be given to the words "during the continuance of this contract," which constitutes an express condition, upon which the right of the agent to recover nine renewal premiums on $12,000 insurance is limited to such renewal premiums only as may fall due while the contract continues.

APPEAL from a judgment of the Superior Court of Los Angeles County. Frederick W. Houser, Judge.

The facts are stated in the opinion of the court.

Taylor & Forgy, for Appellant.

J. W. McKinley, for Respondent.

SHAW, J.—On September 15, 1903, the defendant, who at the time was general agent of the Prudential Insurance Company of America, but in his individual capacity, entered into a contract with plaintiff's assignors, whereby the latter were appointed special agents in certain territory for the purpose of procuring applications for insurance in said company, and upon whom, by the terms of said contract, were imposed certain incidental duties connected with such employment.  The contract consists of fourteen clauses inserted in numerical order and all of which consisted of printed matter, except clause 13, which was inserted in writing before the execution of the contract.  We refer to those parts of the contract which we deem material to a consideration of the case.

By clause 6 of the contract it was provided that such special agent should be allowed for its services the "compensation only" as fixed by a schedule made a part of the contract (but not included in the record), which was a commission of the first year's premiums collected in cash on policies of insurance procured through the efforts of such agent.  By its terms no time was fixed for the termination of the contract, but clause 4 provides that either party thereto may, either with or without cause, upon giving seven days' notice in writing to the other of its intention so to do, terminate the same; and it was by the provisions of said clause 4 further expressly provided that in any event the contract should terminate upon the termination of the contract then existing between the company and said agent, the defendant herein.  Clause 7 of the contract provides that, in case of a termination thereof "for any cause whatever," the compensation which shall then have been paid to the agent, together with amount then due under the contract, shall be in full settlement of all claims and demands, and all further compensation which a continuance of the agency might have secured to him shall be waived and forfeited, except as may be hereinafter provided.  Clause 8 provides for the payment to the agent of a commission on any deferred first year's premiums when it shall be collected on policies procured by the agent and which may remain unpaid at the time of the cancellation of the contract;

subject, however, to the agent being in good standing at the time of the termination of the contract, and that he shall thereafter conduct himself honorably toward the company and the general agent.

Clause 13 is as follows: "13. If the agent shall establish and pay for $12,000 of insurance issued by this company during 1903 on the annual premium participating plans, the general agent agrees to allow the agent nine renewals of 7½% each on such business as the premiums are paid and accepted at this agency, according to the rules of this company during the continuance of this contract, provided, however, that this contract may be terminated when the agent shall not produce during any calendar year after 1903 at least $25,000 of insurance for this company on the above plans."

It is admitted that the special agent did procure $12,000 of insurance in accordance with the plans specified.

The second finding of the court is, in substance, that on April 19, 1904, the parties made a new agreement, the effect of which was to fix the agent's compensation at a flat, graded rate of seventy per cent of the first year's premiums collected in cash upon the business thereafter written.

The cause of action is based upon the provisions of clause 13, and is to recover the seven and one-half per cent upon renewal premiums alleged to have been paid upon policies of insurance procured prior to April 19, 1904, by plaintiff's assignors.

It appears from finding 5 that in January, 1905, all contracts theretofore entered into and existing between the parties were terminated, canceled and annulled. By finding 6, that all contracts between the Prudential Insurance Company and defendant, as general agent thereof, as well as the contract dated September 15, 1903, between defendant and plaintiff's assignors, were terminated in the month of May, 1905. By finding 3 the court finds, "that during the time of the continuance of the contract set forth in plaintiff's complaint, and alleged in full in paragraph I of defendant's answer (the contract of September 15, 1903), no renewal premiums in any amount whatever were received or accepted by said Prudential Company or defendant, in any amount whatsoever, or at all."

Judgment went for defendant, and plaintiff appeals therefrom upon a bill of exceptions.

Appellant contends that the judgment is based upon an erroneous interpretation of the contract, and that certain findings, particularly the third and fourth, find no support in the evidence, of which the contract constitutes the chief part.

It appears that defendant, on December 23, 1904, wrote a letter to the agent, which was duly received, wherein, among other things, he stated: "It is, of course, necessary to terminate your present contract to produce new business for me on December 31st, 1904, notice of which is hereby given"; to which plaintiff's assignors replied on December 27, 1904, expressing sorrow at severing the old relations. Under the provisions of clause 4, we think this notice was a sufficient exercise of defendant's right therein given to terminate the contract of September 15, 1903, as well as that of April 19, 1904, so far as he could exercise such power, and that it was so intended and understood by both parties. This finding, however, became immaterial in view of the fact that the contract of September 15th was terminated when defendant severed his relations with the company, which the court finds occurred in May, 1905. The court finds that during the continuance of the contract of September 15, 1903 (and it may be assumed that it continued to May, 1905), no renewal premiums in any sum whatever, or at all, were received by said defendant, or by the company. Two exhibits, stipulated to be correct, were filed, which it is claimed showed the business written prior to April 19, 1904, and renewal premiums paid thereon, together with time of payment, but as they are not included in the record there is no evidence disclosing that any renewal premiums whatever were paid prior to May, 1905, at which time the court finds that all contracts between defendant and the agent were terminated.

Whether these findings, 5 and 6, as to the termination, annulment and cancellation of the contracts are supported by the evidence depends upon the interpretation given to clause 13. The language of this clause of the contract appears to be plain and unambiguous, and means just what its language imports, namely, that defendant obligated himself to pay the agent seven and one-half per cent of such renewal premiums as might be paid upon policies of insurance procured by the agent, provided such renewals should be paid "during the continuance of this contract." The allowance of this seven and one-half per cent upon renewal premiums was in express

and positive terms made conditional upon their being paid during the *continuance of the contract*, the right to terminate which was by like express terms reserved unconditionally to either party, but according to the provisions of the contract it was in any event to terminate upon the termination of the defendant's contract with the company. This latter contract terminated in May, 1905, prior to which time no renewal premiums were paid. By section 1641, Civil Code, it is made the duty of the court in the interpretation of contracts to give effect to every part thereof, if reasonably practicable. In no other way than as thus interpreted can effect be given to the words "during the continuance of this contract." To accept plaintiff's interpretation, that the agent is entitled to the agreed percentage on nine renewal premiums upon all business procured prior to April 19, 1904, irrespective of the time when the same may be paid, is to ignore that part of the contract constituting an express condition, upon performance of which the agent's right to recover must be predicated.

The judgment is affirmed.

Allen, P. J., and Taggart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 16, 1909.